SHARON P. O'CONOR Formal Opinion General Counsel New York State Thruway Authority No. 2007-F2 200 Southern Blvd. P.O. Box 189 Albany, NY 12201-0189
Dear Ms. O'Conor:
You have asked whether certain types of real property transactions of the New York State Thruway Authority ("Thruway Authority") and New York State Canal Corporation ("Canal Corporation") are not subject to or fall within an exception to the public bidding and fair market value requirements applicable to disposals of property under the Public Authorities Accountability Act of 2005 ("Act"). See Public Authorities Law § 2897. As set forth in your opinion request, you are concerned with the following types of real property transactions: (1) conveyances of property by the Canal Corporation to a railroad corporation pursuant to Canal Law § 53; (2) conveyances of hydropower easements to hydropower developers as authorized by Canal Law § 54; (3) leases to municipalities of property under the jurisdiction of the Canal Corporation where the leased property will be used for public parks, public recreation, and public access to the canals and canal lands; (4) sales or leases of property under the jurisdiction of the Thruway Authority or the Canal Corporation to municipalities to effectuate necessary municipal infrastructure projects such as culvert constructions and modifications, public road and bridge improvement projects, and similar projects; and (5) sales or leases of parcels of surplus property under the jurisdiction of the Thruway Authority *Page 2 
or Canal Corporation to the owner of property that is adjacent to or surrounded by these surplus parcels. With respect to the first four types of transactions, your question is whether the transactions are subject to the public bidding and fair market value requirements of the Act; with respect to disposals to the adjacent property owner, your question is limited to whether this type of transaction is subject to the public bidding requirement.
As explained below, we conclude that transactions expressly permitted by Canal Law §§ 53 and 54 are not subject to the public bidding and fair market value requirements of the Act to the extent such requirements conflict with the specific provisions of those statutes. We further conclude that in many cases leases to municipalities for public parks, recreation, and public access to the canal system and leases or sales to municipalities for necessary infrastructure projects will be exempt from these requirements. However, we also conclude that the fact that a disposal of property will be to an adjacent landowner does not in itself exempt the disposal from the Act's public bidding requirement.[1]
I. STATUTORY BACKGROUND
A. Canal Corporation
The statutory purpose of the Canal Corporation, which was created by the State Legislature in 1992 as a subsidiary corporation of the Thruway Authority, is to operate, maintain, construct and reconstruct, improve, develop, finance, and promote the New York State canal system. Public Authorities Law § 382(1). To that end, it exercises the powers and duties under the Canal Law that were previously exercised by the New York State Department of Transportation, including exercising jurisdiction over all state property owned or used in connection with the canal system. Canal Law § 6(1). In transferring jurisdiction over the canal system[2] to the Canal Corporation, the Legislature provided that the "canal system shall remain the property of the state and under its management and control as exercised by and through the [Thruway A]uthority, through the *Page 3 
[Canal C]orporation" and, thus, the Canal Corporation holds such property "in the name of the people of the state of New York."Id.
With respect to the state canal lands, the Canal Corporation is authorized to grant leases and revocable permits, acquire lands necessary for canal purposes, and abandon canal lands no longer necessary or useful for canal purposes. Id. § 10(15),(17) (powers of the Canal Corporation). Provisions of the Canal Law prescribe the scope of the Canal Corporation's authority with respect to these transactions and the procedures that govern them. See Canal Law art. 5 (acquisition of property), art. 6 (abandonment of canal lands), art. 6-A (leasing of canal lands), art. 10 (permits).
Of particular relevance to your inquiry, the Canal Corporation's authority to sell canal lands is statutorily circumscribed: it must determine that the lands are no longer necessary or useful for canal purposes; comply with statutory procedures governing the abandonment of canal lands, which include public notice and comment and, in some instances, a public hearing; and issue an official order abandoning the lands for canal purposes. Canal Law §§ 50, 51. Additionally, proposed abandonments of canal lands may be subject to review by the Canal Recreationway Commission, the advisory body charged with developing the Canal Recreationway Plan, for consistency with the Canal Recreationway Plan. See Id. § 138-b(5)(b) (authorizing Commission to establish procedures for its review of abandonments of canal land for consistency with the Canal Recreationway Plan).
The Canal Corporation's authority to lease canal lands also is statutorily circumscribed. The Corporation is authorized to lease lands, except lands in the Adirondack Park, having no essential purpose for navigation, and the leasing of such lands must be consistent with the statewide Canal Recreationway Plan. Id. §§ 55(1)-(3),(5) and 138-b(5)(b). Additionally, leases of canal lands are subject to prior review by the Canal Recreationway Commission, Id. § 55(1), and state law specifies certain terms and conditions that such leases must contain, see Id.
§ 56; Public Authorities Law § 382(7)(m).
B. Thruway Authority
The Thruway Authority was created to finance, construct, improve, maintain, and operate a state thruway system. Public Authorities Law § 353. Its statutory powers include the authority to "acquire and hold in the name of the state by purchase or appropriation real property or rights or easements therein." Id. § 354(4). With respect to property under its jurisdiction, the Thruway Authority is authorized "to sell, *Page 4 
exchange, or otherwise dispose of any real property not necessary for its corporate purposes or whenever the [governing] board shall determine that it is in the interest of the authority." Id. It is also authorized to lease or grant permits for the use of property not presently required for thruway purposes upon such terms and conditions as determined by the Thruway Authority Board. Id.
C. Public Authorities Accountability Act of 2005
The Public Authorities Accountability Act of 2005 was enacted to "ensure greater efficiency, openness and accountability for our State's public authorities." Senate Memorandum in Support of ch. 766,reprinted in 2005 McKinney's N.Y. Laws 2576. In part, the Act added provisions to the Public Authorities Law governing the disposition of property by state and local public authorities. L. 2005, c. 766, § 20 (adding a new title 5-a, §§ 2895-2897, to Article 9 of the Public Authorities Law). For purposes of these provisions, disposal is defined as a "transfer of title or any other beneficial interest in personal or real property," and property is defined as "personal property in excess of five thousand dollars in value, real property, and any inchoate or other interest in such property, to the extent that such interest may be conveyed to any other person for any purpose, excluding an interest securing a loan or other financial obligation of another party."Id. § 2895(2),(3).
As relevant here, section 2896 of the Public Authorities Law requires every state and local public authority, as defined in section 2 of the Public Authorities Law, to adopt comprehensive guidelines regarding contracts for the disposal of property and to designate a contracting officer responsible for compliance with and enforcement of these guidelines. Id. § 2896(1). Section 2896 also requires each public authority to, inter alia, maintain adequate inventory controls and accountability systems for all property under its control and, after determining which property shall be disposed of, promptly transfer or dispose of such property in accordance with Public Authorities Law § 2897. Id. § 2896 (2)(d).
Section 2897, in turn, provides that any public authority may dispose of property "for not less than the fair market value of such property by sale, exchange, or transfer, for cash, credit or other property."[3]
Public Authorities Law § 2897(3). Thus, *Page 5 
the Act requires that all disposals of property by a public authority be for the fair market value of the property. Section 2897 also requires that "[a]ll disposals or contracts for disposal of property of a public authority . . . shall be made after publicly advertising for bids," and sets forth the required public bid procedures, which include advertising for bids in a way that "permit[s] full and free competition" and awarding the contract to the responsible bidder whose bid "will be most advantageous to the state." Id. § 2897(6)(a),(b). The authority may forego the public bidding process and dispose of the property by negotiation or public auction, subject to obtaining such competition as is feasible under the circumstances, if one of the following exceptions applies:
 1. the disposal involves personal property of a nature or quantity that, if disposed of by public bidding, would adversely affect the state or local market for such property and where the estimated fair market value can be obtained by negotiation;
 2. the disposal involves property with a fair market value that does not exceed $15,000;
 3. the bid prices are not reasonable or have not been independently arrived at in open competition;
 4. the disposal will be to the State or any political subdivision, and the estimated fair market value of the property and other satisfactory terms of disposal are obtained by negotiation;
 5. the disposal is for an amount less than the estimated fair market value of the property, the terms of such disposal are obtained by public auction or negotiation, the disposal is intended to further the public health, safety, or welfare or an economic development interest of the State or a political subdivision, and the purpose and terms of the disposal are documented in writing and approved by resolution of the board of the public authority; or
 6. such action is otherwise authorized by law. Public Authorities Law § 2897(6)(c)(i)-(vi). *Page 6 
Although the enumerated exceptions are defined as exceptions to the public bidding process, the fifth enumerated exception — for disposals that further the public health, safety, or welfare — by its terms also permits such disposals for less than fair market value. It is the only statutory exception that permits disposals for less than fair market value.
II. ANALYSIS
You have asked whether certain types of real property transactions by the Canal Corporation or Thruway Authority fall within the exception for disposals that "further the public health, safety and welfare" or are otherwise exempt from the public bidding or fair market value requirements of Public Authorities Law § 2897. Initially, we note that even if the transactions about which you inquire are exempt from the public bidding or fair market value requirements, the Thruway Authority and Canal Corporation would be required to negotiate the price or dispose of the property through public bidding, subject to such competition as is feasible under the circumstances. See Id. § 2897(6)(c). We further analyze each type of transaction below.
A. Disposals Pursuant to Canal Law §§ 53 and 54
Canal Law § 53 authorizes the Canal Corporation, under specified circumstances,[4] to grant or convey certain canal lands to a railroad corporation, upon the railroad corporation's written request, "for a nominal or other consideration and upon such terms and conditions which [the Corporation] shall deem to be beneficial to the state." Canal Law § 54 authorizes the Canal Corporation under specified circumstances[5]
to sell to a federally-licensed hydropower developer at its request a hydropower easement in barge canal system lands. The hydropower easement may be sold "at private sale" and "for a price to be *Page 7 
determined by the [Canal C]orporation taking into consideration the value of obligations to be assumed by such licensed developer, the value of the rights granted to such developer to use canal system lands, waters and facilities for hydropower project purposes and any other appropriate factors." Id. § 54(1). Your concern is that sales conducted pursuant to Canal Law §§ 53 and 54 would not comply with the public bidding requirement of Public Authorities Law § 2897 and could result in sales that are for less than the fair market value.[6]
As explained below, we believe that sales of canal lands and hydropower easements pursuant to Canal Law §§ 53 and 54 need not comply with the public bidding and fair market value requirements of Public Authorities Law § 2897, to the extent these requirements conflict with the specific methods and terms of disposal authorized by these provisions of the Canal Law.
First, the language of the Public Authority Accountability Act indicates that the public bidding and fair market value requirements of the Act were not intended to apply where, as here, another state law authorizes the authority to dispose of property by a specific method other than public bidding and specifically authorizes a disposal that may be for an amount less than the fair market value of the property to be disposed of. Thus, section 2897 provides that an authority may dispose of property through negotiation or public auction, without complying with the public bidding requirement, if "such action is otherwise authorized by law." Public Authorities Law § 2897(6)(c)(vi). We believe this language includes state statutes like Canal Law §§ 53 and54 that specifically authorize a public authority to dispose of property by negotiation or public auction, or another method inconsistent with public bidding.
Similarly, the exception for disposals that are intended to further the public health, safety, or welfare, which permits disposals at less than fair market value through negotiation or public auction, includes as an example of disposals that satisfy this criterion "where the authority's enabling legislation permits." Thus, this exception provides that a disposal may be negotiated or made by public auction without public bidding if "the disposal is for an amount less than the estimated fair market value of the property, the terms of such disposal are obtained by public auction or negotiation, the disposal of the property is intended to further the public health, safety, or welfare or an economic development interest of the state or a *Page 8 
political subdivision (to include but not limited to, the prevention or remediation of a substantial threat to public health or safety, the creation or retention of a substantial number of job opportunities, or the creation or retention of a substantial source of revenues, orwhere the authority's enabling legislation permits), the purpose and the terms of such disposal are documented in writing and approved by resolution of the board of the public authority." Public Authorities Law § 2897(6)(c)(v) (emphasis added). We believe this language refers to authority enabling legislation, like Canal Law §§ 53 and 54, that specifically addresses the amount for which property may be disposed and permits a disposal that may be for an amount less than fair market value through negotiation or public auction.[7] In these circumstances the Legislature itself has determined that the specified disposals for less than fair market value further a public health, safety, or welfare or economic development interest within the meaning of this exception.
Additionally, language in Canal Law §§ 53 and 54 reflect a legislative intent that the terms of these statutes, rather than any conflicting provisions, should govern these specifically-authorized and special transactions. Section 53 authorizes the Canal Corporation to convey lands to a railroad corporation under the narrow circumstances presented "notwithstanding the provisions of any general or special law." Similarly, Canal Law § 54 permits the described hydropower easements sales "[n]othwithstanding" Public Lands Law §§ 3(2), 50 and Canal Law §§ 50, 51 and 52, the specific statutory provisions that would otherwise govern the abandonment and sale of canal lands.[8] See Canal Law § 54(1).
Thus, to the extent Canal Law §§ 53 and 54 permit the Canal Corporation to convey canal lands or hydropower easements for less than fair market value, we believe such conveyances fall *Page 9 
within the exception for disposals that further the public, health, safety, or welfare and are therefore permitted under the Act.
B. Disposals to Municipalities for Public Parks, Public Access, orPublic Recreation and Necessary Municipal Infrastructure Projects
You have explained that the Canal Corporation historically has leased property to municipalities for less than fair market value where the municipality's proposed use of the property was for parks, public access, or public recreation. You are also concerned with the sale or lease of property by the Canal Corporation or Thruway Authority to municipalities for less than fair market value for necessary municipal infrastructure projects — such as culvert constructions and modifications, public road and bridge improvement projects and similar projects. You have not identified and we are not aware of any provisions of law that specifically authorize the Thruway Authority or Canal Corporation to dispose of property for less than fair market value under these circumstances.[9] Therefore, the public bidding and fair market value requirements of the Public Authorities Accountability Act apply to these transactions, unless these transactions fit within an exception to the public bidding and fair market value requirements of the Act.
Because the proposed transactions involve leases or sales of property to municipalities, they are expressly excepted from the public bidding requirement of the Act. See Public Authorities Law § 2897(6)(c)(iv) (excepting a disposal from the public bidding requirement if it will be "to the state or any political subdivision, and the estimated fair market value of the property and other satisfactory terms of disposal are obtained by negotiation"). However, because disposals to local governments are expressly excepted from only the public bidding requirement, such disposals must be made at fair market value unless the Act's exception for disposals of property that further the public health, safety, or welfare or an economic development interest of the State or a political subdivision applies. See Public Authorities Law § 2897(6)(c)(v). You propose that this exception applies to these transactions. *Page 10 
In our previously-issued opinion interpreting the exception for disposals that further the public health, safety, or welfare, we concluded that it must be carefully limited in its application.See Op. Att'y Gen. No. 2006-F4. We based this conclusion on the language of this exception, which indicates that the Legislature intended to exempt from the fair market value requirement disposals that alleviate "substantial" public health and safety concerns or provide "substantial" public economic benefits. Id. We also considered the purpose and legislative history of the Public Authority Accountability Act as a whole and the disposition requirements in particular, and concluded that a narrow interpretation and application of this exception was necessary to avoid undermining the primary purpose of the disposition requirements — to ensure that authorities do not dispose of property for less than its fair market value. Id.
You note that courts have broadly interpreted the terms public health, safety, and welfare as used in other statutes. However, if these terms were interpreted in this statutory exception as broadly as they may be in other contexts, the requirement that public authorities engage in public bidding procedures and obtain the fair market value for property disposals would be wholly illusory. Public authorities are created to serve a public or governmental purpose and the enabling legislation of many authorities defines the authority's corporate purposes in terms of the public health, safety, welfare, or prosperity of the State.See, e.g., Public Authorities Law § 566 (stating that in carrying out its corporate purposes the Thruway Authority is acting "in all respects for the benefit of the people of the state of New York, for the improvement of their health, welfare and prosperity"). Therefore, almost any disposal permitted by an authority's enabling act could be said to serve a public purpose, or further the public health, safety, or welfare or an economic interest of the State. Thus, if the references to "public health, safety and welfare" and "economic development" were interpreted broadly to include all disposals that further the public interest, an argument could be made that every property disposal by a public authority falls within this exception and is thereby exempt from the public bidding and fair market value requirements of the Act. Such was clearly not the Legislature's intent. Accordingly, the fact that the statutes governing the Thruway Authority and Canal Corporation may permit or even encourage disposals to municipalities for the contemplated purposes is insufficient to bring the proposed disposals within the terms of this exception.
For other reasons, however, we believe that leases to a municipality for less than fair market value for the development of public parks, public recreation, and public access to the canal system are likely to satisfy this exception. We similarly *Page 11 
believe that proposed leases or sales of canal lands or property held by the Thruway Authority to municipalities for necessary municipal infrastructure projects are likely to be considered as serving a substantial public health, welfare, or safety interest of the State.
Most significantly, both types of disposals ensure that the property leased or conveyed will remain accessible to or used by the general public — as public parks or other recreation sites, for public access to the canal system, or as public highways or other transportation infrastructure. Thus, unlike other disposals to municipalities that may serve a primary public purpose while also benefitting private interests — for example, where the property will be used for economic development and may be conveyed by the municipality to private owners — where property is leased or conveyed to a municipality for public parks and recreation or for public infrastructure projects, the disposal appears to create an exclusively public benefit.
Additionally, with respect to the leasing of canal lands to municipalities for public parks and the like, you have explained that partnerships between the Canal Corporation and local municipalities to construct, operate, and maintain such access sites is a major component of the Canal Recreationway Plan,[10] and that making the property available to municipalities for less than the fair market value of the property helps to ensure that the Canal Corporation is able to foster recreational development along the canal system. With respect to disposals for municipal infrastructure projects, you have limited your question to projects that are necessary for public welfare and safety, which we assume means that they are necessary to ensure the continued safety of the targeted public transportation infrastructure. Thus, the specific types of proposals you have described are circumscribed in their scope and application.
It is also significant that neither of these types of property disposals were previously found subject to abuse by public authorities or were the types of transactions that prompted enactment of the stringent disposition procedures of the Act. Thus, in general, we believe that these types of *Page 12 
transactions are likely to be considered as serving the public welfare or safety within the meaning of this statutory exception.
We note, however, that the public health, safety, and welfare exception requires written documentation of the purpose and terms of the disposal and approval of the disposal by resolution of the authority's board. See Public Authorities Law § 2897(6)(c)(v). Therefore, consistent with this requirement and the exception's necessarily limited scope, the Thruway Authority and Canal Corporation Board must carefully review each proposed lease or conveyance and determine in each case that the lease or sale furthers a substantial public health, safety, or welfare or economic development interest of the State. Factors that we believe the Board should consider include the value of the property to the State for other purposes and the overall public benefit that will result from the proposed lease or conveyance.
Finally, inasmuch as the contemplated disposals involve the use of state canal lands or lands held by the Thruway Authority in the name of the State, we believe it is appropriate for the Canal Corporation and Thruway Authority to look to the Public Lands Law for guidance as to the types of conditions that should be included in such leases or conveyances to protect the public's interest in these lands. Public Lands Law § 34, which applies to conveyances by the State Office of General Services of unappropriated (i.e., surplus) state lands to municipalities for nominal consideration for certain purposes including parks, recreation, and street or highway purposes, requires that lands transferred under this provision be used for the intended purposes and provides for reversion of title to the property to the people of the State if the property is not properly improved or maintained for the specified purpose.[11] Id. § 34(1). The Thruway Authority and Canal Corporation should consider whether including similar reversion rights in these leases and conveyances will help ensure that the disposals serve their intended public purposes. *Page 13 
C. Conveyances to the Owner of Adjacent Land
As outlined in your opinion request, the Thruway Authority and Canal Corporation retain parcels of surplus property that are either surrounded by or adjacent to land held by a single property owner. You note that under these circumstances the adjacent property owner is likely to be the only practicable purchaser or lessee of the parcel, eliminating the benefit or need for the public advertising of bids required by Public Authorities Law § 2897(6). You further note that the Act does not contain an exception to the public bidding requirement applicable to this situation, but propose that, assuming the authority can negotiate a price reflecting the fair market value of the property, public bidding should not be required where the property to be disposed of is so unique that the adjacent property owner likely will be the only bidder.
We disagree. Section 2897 provides that all disposals shall be made after publicly advertising for bids except as provided for in the statute. Public Authorities Law § 2897(6)(a). None of the enumerated exceptions encompass a negotiated sale to the private owner of adjacent property. Thus, by its terms the statute does not exempt such disposals from the public bidding process. Nor is there any legislative history to support the conclusion that the Legislature intended to exempt such disposals even if they did not fit into one of the other enumerated exceptions. To the contrary, in earlier versions of public authority reform bills introduced in and passed by the Assembly, the enumerated exceptions to the public bidding requirement included an exception for dispositions of real property where "the character or condition of the real property, the nature of the interest to be conveyed or other unusual circumstances make it impractical to advertise publicly for competitive bids, and the fair market value of the property and other satisfactory terms of disposal can be obtained by negotiation." 2004 N.Y. Assembly Bill A.9010-C; 2005 N.Y. Assembly Bill A.3.[12] In subsequent bills, this exception was replaced with the "public health, welfare and safety" exception enacted as Public *Page 14 
Authorities Law § 2897(6)(c)(v). This legislative history provides some evidence that the drafters of the Public Authority Accountability Act ultimately rejected an exception to the public bidding requirement that would apply to the circumstances you present.
Thus, the fact that property to be disposed of by an authority is adjacent to or surrounded by property held by a single owner does not in itself permit the authority to forego the public bidding requirement of Public Authorities Law § 2897.
CONCLUSION
For the foregoing reasons, we conclude that transactions expressly permitted by Canal Law §§ 53 and 54 are not subject to the public bidding and fair market value requirements of the Public Authorities Accountability Act to the extent such requirements conflict with the specific provisions of those statutes, that leases and sales to municipalities for public parks, recreation and public access to the canal system, or for necessary infrastructure projects, are likely to be exempt from these requirements, and that the disposal of property to an adjacent landowner is not exempt from the public bidding requirement unless a statutory exception applies.
Very truly yours,
ANDREW M. CUOMO Attorney General
[1] You have not asked, and this opinion does not address, whether the proposed transactions comply with other applicable provisions of law.
[2] The canal system includes all the canals, canal lands, feeder canals, reservoirs, canal terminals, and canal terminal lands of the State. Canal Law § 2(1) (definition of canal system); see also Public Authorities Law § 351 (defining canal system for purposes of title 9 of the Public Authorities Law).
[3] With respect to "real property, any interest in real property, or any other property which because of its unique nature is not subject to fair market pricing," the statute requires an appraisal of the value of such property by an independent appraiser for inclusion in the record of the transaction. Public Authorities Law § 2897(3).
[4] The canal lands must be required in connection with a railroad bridge constructed or reconstructed by or for a railroad corporation over a portion of the barge canal improved with the use of certain federal monies, the Canal Corporation must first issue an official order abandoning the lands for canal purposes, and the land must be conveyed to the railroad corporation "for and on behalf of the people of the state of New York." Canal Law § 53.
[5] The easement rights must be no longer necessary or useful to the canal system, the Canal Corporation must adopt an order so providing, the Governor must approve the sale, and the easement must be limited as provided for in the statute. Canal Law § 54(1),(2).
[6] You have advised that the statutory method for determining the sale price of hydropower easements under Canal Law § 54 could result in a price that is less than fair market value.
[7] Canal Law §§ 53 and 54 are incorporated by reference in the Canal Corporation's enabling legislation, see Public Authorities Law §382(7)(k) (authorizing the Corporation to "exercise those powers and duties of the authority pursuant to the canal law"), and thus may be considered part of its enabling legislation.
[8] Canal Law §§ 50-52 currently govern the sale of abandoned canal lands by the Canal Corporation. When Canal Law § 54 was adopted in 1984, the Commissioner of General Services obtained jurisdiction over canal lands officially abandoned for canal purposes and was authorized to dispose of such lands pursuant to the Public Lands Law, see infra n. 11, and hence the reference in Canal Law § 54(1) to the Public Lands Law.
[9] Indeed, Canal Law § 56, which governs the terms of leases of canal lands, requires that such leases include "proper covenants to assure the payment of adequate consideration." Id. § 56(3). However, you have advised that the Canal Corporation has interpreted this requirement as permitting the payment of less than the fair market value of the leased property under appropriate circumstances.
[10] One of the legislative objectives in the creation of the Canal Recreationway Plan is the development of the canal into a recreationway system. Canal Law § 138-c(1)(a). To that end, the Legislature directed the Commission to include in the Plan provisions that protect the public interest in the canal system and "encourage increased public access to the canal through the establishment of parks, scenic by ways and recreational trails on the canal system." Id. § 138-c(1)(d).
[11] Prior to 1996, this provision was applicable to canal lands. Under the previous version of Canal Law § 51, the Commissioner of General Services had jurisdiction over abandoned canal lands subject to the provisions of the Public Lands Law. Canal Law § 51 (McKinney 1939 Supp. 1994); see Public Lands Law § 50 (authorizing the Commissioner to convey abandoned canal lands in the same manner as unappropriated state lands under Public Lands Law art. 3). By enactment of chapter 442
of the laws of 1996, section 51 was amended to remove the Commissioner of General Services' jurisdiction over abandoned canal lands.
[12] Additionally, these earlier versions of the proposed disposition provisions required review and approval by the State Comptroller of all public authority contracts for or having an estimated fair market value of more than $15,000, see 2004 N.Y. Assembly Bill A.9010-C; 2005 N.Y. Assembly Bill A.3, and, thus, for such contracts the authority's determination that "unique" circumstances warranted an exception to the public bidding requirement would have been subject to the Comptroller's review and approval.